IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHANNA BANKS,

    Plaintiff,

v.

LELAND C. DUDEK,[1]

    Defendant,

2:24-CV-00757-CCW

**OPINION AND ORDER**

    Before the Court are cross motions for summary judgment. ECF Nos. 6, 8. For the reasons set forth below, the Court will DENY Defendant's Motion and GRANT Plaintiff's Motion insofar as she seeks remand for further administrative proceedings.

**I.    Background**

    Plaintiff protectively filed an application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C. § 401 *et seq.*, on June 8, 2021, alleging disability beginning June 28, 2019. (R. 17). Plaintiff sought a hearing after her application was initially denied and appeared telephonically for a hearing before an Administrative Law Judge ("ALJ") on March 9, 2023. (*Id.*). On August 1, 2023, the ALJ found Plaintiff to be not disabled and denied her DIB application. (R. 36). Plaintiff sought review before the Appeals Council. (R. 9). Upon the Appeals Council's denial of Plaintiff's request for review, (R. 1), the ALJ's decision became the final agency determination of Plaintiff's disability. 20 C.F.R. § 404.981. Plaintiff now seeks review in this Court and asks the Court to remand this matter for further administrative proceedings.

---

[1] Leland Dudek is substituted as the defendant in this matter pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g). The clerk is directed to amend the docket to reflect this change.

## II.  Standard of Review

For legal questions, the Court's review is plenary. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). The Court reviews the ALJ's fact finding for "substantial evidence." *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019) (quoting 42 U.S.C. § 405(g)). The evidentiary threshold for "substantial evidence" is "not high." *Id.* at 103. It demands only that an ALJ's findings be supported by "such relevant evidence as a reasonable mind might accept as adequate." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quotation omitted). If, upon review of the record as a whole, *Schaudeck*, 181 F. 3d at 431, the Court determines that the ALJ's findings are supported by substantial evidence, the Court is bound by those findings even if it would have decided the case differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review. *Jones v. Barnhart*, 364 F. 3d 501, 505 (3d Cir. 2004). The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter v. Harris*, 642 F.2d. 700, 705 (3d Cir. 1981). Stated differently, the ALJ "must provide at least a glimpse into his reasoning," and "build an accurate and logical bridge between the evidence and the result." *Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014) (citations omitted).

An ALJ's determination of disability proceeds in five steps.

> The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity;  (2) if not, whether the claimant has a severe impairment;  (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1;  (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work;  and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity.

*Edwards v. Berryhill*, No. CV 16-475, 2017 WL 1344436, at *1 (W.D. Pa. Apr. 12, 2017) (citing 20 C.F.R. § 404.1520).  The inquiries at steps four and five require the ALJ first to formulate a claimant's residual functional capacity ("RFC"), which is "the most [a claimant] can still do despite [his or her] limitations" from "medically determinable impairments" including those that are non-severe.  20 C.F.R. §§ 404.1545(a)(1)–(2), (5).  The ALJ's formulation of a claimant's RFC must be "based on all the relevant evidence in [the claimant's] case record," *id.* § 404.1545(a)(1), and it must include all limitations that a claimant proves to be credible.  *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x. 140, 147 (3d Cir. 2007) ("[T]he ALJ need only include in the RFC those limitations which he finds to be credible.").  The claimant bears the burden of proof for the first four steps, and the Commissioner bears the burden of proof at step five.  *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010).  Where an ALJ has articulated reasoning supporting a credibility determination, that determination is entitled to "great deference."  *Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x. 183, 188–89 (3d Cir. 2007) (quoting *Atlantic Limousine, Inc. v. NLRB*, 243 F.3d 711, 718 (3d Cir. 2001)).

### III.    The ALJ's Decision

The ALJ first found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  (R. 19).  Next, the ALJ found that Plaintiff had one severe, medically determinable impairment:  "degenerative disc disease of the cervical and lumbar spine."  (*Id.*).

Still at step two of the five-step evaluation, the ALJ considered diagnoses of numerous other physical conditions including migraine headaches, as well as diagnoses of mental conditions including "depressive/adjustment disorder" and "anxiety disorder" (collectively "mental impairments"). (R. 20–21). The ALJ determined that Plaintiff's headaches and mental impairments were medically determinable impairments but non-severe. (R. 21–22). At step three, the ALJ found Plaintiff had no impairments that met or equaled criteria for a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 24). Having resolved steps one and two in Plaintiff's favor, but having found no presumptively disabling impairments at step three, the ALJ next formulated Plaintiff's RFC. The ALJ found Plaintiff to be capable of "light work as defined in 20 CFR 404.1567(b), except she can occasionally climb ramps, stairs, ladders, ropes, and scaffolds and occasionally balance, stoop, kneel, crouch and crawl. (R. 25–26). At step four, the ALJ determined that Plaintiff could perform past relevant work as a case worker, specifically as a teen parent advocate. (R. 35). Because Plaintiff was capable of performing past relevant work, the ALJ found her to be not disabled. (R. 36).

## IV.   Legal Analysis

Plaintiff argues that the ALJ committed reversible error by omitting limitations for Plaintiff's non-severe impairments of migraine headaches and mental health impairments from the RFC determination. ECF No. 7. As a result, Plaintiff argues the ALJ also erred when applying this RFC and determining that Plaintiff could return to her past work as a case worker. *Id.*

The Court has considered Plaintiff's arguments and will remand this matter for further proceedings, primarily because the ALJ's discussion at step four fails to sufficiently explain why she declined to include functional limitations in the RFC relating to Plaintiff's non-severe

4

impairments of migraine headaches, and mental impairments of depression and anxiety. The Court will first discuss Plaintiff's headaches and then turn to her mental impairments.

### A. The ALJ Did Not Sufficiently Describe the Reasons for Excluding Functional Limitations Caused by Plaintiff's Migraine Headaches from the RFC

As a threshold matter, it is undisputed that the ALJ must consider non-severe, as well as severe, impairments, in making the RFC determination. *See* 20 C.F.R. 404.1545(a)(2). Here, the ALJ found Plaintiff's headaches and mental impairments to be non-severe at step two of the sequential analysis. (R. 21).

First, with respect to headaches, the ALJ included some discussion of headaches at step two of her analysis. Regarding a list of 13 physical conditions including headaches,[2] the ALJ stated that "the record does not evidence any limitations arising out of any of these conditions, and various treatment notes indicate that they were sporadic and/or acute in nature . . . or they are stable and controlled." (R. 20). The ALJ then discussed each individual diagnosis. (R. 20–21). Regarding headaches, the ALJ wrote: "She reported migraine headaches (Ex. 26F, p. 5, 14, 18, 33), but she sought minimal treatment for these, and she testified that her headaches did not substantially affect her ability to work (Hearing Recording)." (R. 21). The ALJ then concluded her step two analysis of Plaintiff's physical (as opposed to mental health) conditions as follows:

> Because the evidence reveals that these impairments do not significantly limit the claimant's ability to do basic work activities, they are considered nonsevere . . . . Nevertheless, the undersigned has considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.

(*Id.*).

---

[2] The other twelve diagnoses the ALJ discussed were asthma, obstructive sleep apnea, gastroesophageal reflux disease, Chiari malformation, degenerative joint disease of the bilateral hands, coronary artery disease, hypertension, hyperlipidemia, vitamin D deficiency, B12 deficiency, nontoxic diffuse goiter, and diabetes mellitus. (R. 20).

At step four, the ALJ's only discussion of headaches is a purported summary of Plaintiff's hearing testimony: "Moreover, she indicated that she had been diagnosed with migraine headaches as well as diabetes with neuropathy, but those symptoms did not prevent her from working." (R. 27). Plaintiff asserts that this is an "unreasonable summary" of her hearing testimony. ECF No. 7 at 8. Indeed, Plaintiff's testimony was more nuanced on the topic of headaches:

> Q [by ALJ]: Okay. And migraine disorder was also noted. Are you still having migraines?
> A: I have a headache every single day of my life.
> Q: Okay. Does that cause you any issues working or did it cause you any issues when you were working?
> A: Occasionally when they've gotten very – when they're extremely bad, I've had to call off. But in general, I worked through them. I knew it was something that I had to do.

(R. 63). On appeal to this Court, Plaintiff asserts that the RFC should have included, at a minimum, "an off-task and/or absence limitation" to account for a migraine headache that occurred in the workplace.[3] ECF No. 7 at 9.

The Court agrees that in light of Plaintiff's testimony regarding headaches, and the fact that ALJ did not discuss Plaintiff's neurology records regarding headaches, there is an insufficient explanation for the ALJ's failure to include a functional limitation in the RFC to address headaches. It may be that the ALJ's exclusion of functional limitations for headaches was entirely appropriate, but the ALJ's opinion does not provide a sufficient "glimpse into [her] reasoning" on this point, or "build an accurate and logical bridge between the evidence and the result," *i.e.* the decision that no functional limitations were necessary in the RFC for Plaintiff's non-severe impairment of headaches. *Gamret v. Colvin*, 994 F. Supp.2d 695, 698 (citations omitted).

---

[3] To the extent Plaintiff argues that the ALJ should have included a limitation "to prevent migraine headaches from occurring," *see* ECF No. 7 at 9, Plaintiff has failed to identify any such limitation and therefor has not met her burden.

6

Accordingly, the Court will REMAND this case for the ALJ to supplement her discussion about the reasons for excluding functional limitations for headaches.

B. **The ALJ Did Not Sufficiently Describe the Reasons for Excluding Functional Limitations Caused by Plaintiff's Mental Impairments from the RFC**

The ALJ discussed Plaintiff's mental impairments specifically and at length at step two, before concluding that "[b]ased on the evidence discussed above, the undersigned concludes that the severity of the claimant's medically determinable mental impairment(s), considered singly and in combination, does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (R. 22). The ALJ then expressly discussed each of the "four broad functional areas [] known as the 'paragraph B' criteria," (*id.*), and determined that Plaintiff had no more than "mild limitation" in each functional area. (R. 22–23). Because Plaintiff's mental impairments caused no more than mild limitation, "and the evidence d[id] not otherwise indicate that there [was] more than a minimal limitation in the claimant's ability to do basic work activities," the ALJ determined the mental impairments were non-severe. (R. 23). After analyzing the paragraph B criteria and concluding that the mental limitations were non-severe, the ALJ stated:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned found in the "paragraph B" mental function analysis.

(*Id.*).

At step four, the ALJ further specifically discussed the psychological consultative examiner's findings, that Plaintiff "had moderate limitation in her ability to respond appropriately to usual work situations and to changes in a routine work setting and interact appropriately with

7

the public, supervisors, and coworkers." (R. 32). The ALJ found this portion of Mr. King's opinion unsupported, both because it conflicted with Mr. King's "own largely unremarkable examination findings" and because it "[was] also not consistent with the totality of the medical evidence, which reflect[ed] largely unremarkable mental status examination findings throughout the relevant period, the claimant's ability to engage in many activities of daily living, her failure to follow through with her primary care provider's referral to a psychiatrist, and her primary care provider's findings throughout the relevant period that her depression and anxiety were stable." (*Id.*) (citing multiple portions of the record in support). The ALJ also specifically discussed and found persuasive Mr. King's finding that Plaintiff had a "mild limitation in her ability to make judgments on simple and complex work-related decisions and understand, remember, and carry out complex instructions. (R. 33).

Still at step four, the ALJ also discussed the findings of Braden Ambrose, M.A., who found that Plaintiff had:

> extreme limitation in her ability to deal with work stress, function independently, maintain attention/concentration, understand, remember and carry out complex job instructions, and demonstrate reliability; marked limitation in her ability to deal with the public, use judgment, interact with supervisors, understand, remember and carry out simple as well as detailed, but not complex instructions, maintain personal appearance, behave in an emotionally stable manner, and relate predictably in social situations; and moderate limitation in her ability to follow work rules and relate to coworkers.

(R. 33). The ALJ found this entire opinion to be unpersuasive, both because Mr. Ambrose's treatment notes are not part of the record, so it was unclear whether his examination findings would support any of the substantial limitations he assessed, and because "his opinion [was] not consistent with the other evidence in the record . . . ." (R. 33–34).

The ALJ also discussed, and found persuasive, the state agency psychological consultants' opinions, that Plaintiff had mild limitations in each of the four paragraph B areas. (R. 34).

8

On appeal to this Court, Plaintiff argues that the ALJ erred in failing to explain why she omitted mental limitations in the RFC to account for Plaintiff's mental impairments. ECF No. 7 at 10–19. The Court agrees with Plaintiff. The RFC itself did not contain any limitations for Plaintiff's mental impairments. Although the ALJ discussed the findings of various providers regarding Plaintiff's mental impairments, and concluded that she had mild functional limitations, the ALJ did not explain why none of those mild functional limitations warranted a corresponding limitation in the RFC. Here again, the Court does not have a sufficient "glimpse" into the reasons why the ALJ declined to include any such limitations.

Accordingly, the Court will remand this case for the ALJ to supplement her discussion about the reasons for excluding functional limitations for Plaintiff's mental impairments in the RFC.[4]

## V.  Conclusion

For the foregoing reasons, this matter is hereby remanded to the Commissioner for further proceedings consistent with this Order, pursuant to the fourth sentence of 42 U.S.C. § 405(g).

DATED this 2nd day of June, 2025.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND

---

[4] Plaintiff's other arguments for remand are largely unpersuasive. First, Plaintiff's argument that the ALJ erred at step two in classifying her headaches and/or mental impairments as non-severe, ECF No. 7 at 6–8 (headaches), 17–19 (mental impairments), rather than severe is not itself reversible because the ALJ found in Plaintiff's favor at step two by determining that her back issue was a severe impairment, (R. 19). Thus, any error at step two could've been rectified by adequate consideration of functional limitations caused by mental impairments later in the decision. *See Komorek v. Comm'r of Soc. Sec.*, No. CV 20-34, 2021 WL 1197507, at *3 n.6 (W.D. Pa. Mar. 30, 2021).

United States District Judge

cc (via ECF email notification):

All Counsel of Record